1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C 06-565 SI |
| Plaintiff, | **CORRECTED ORDER RE: DEFENDANTS' MOTIONS** |
| v. | |
| PRISCILLA HUNTER, et al., | |
| Defendants. | |
| _____/ | |

On November 30, 2007, the Court heard argument on various motions filed by defendants. As set forth below, the Court GRANTS the motions to dismiss the counts related to making political contributions and first class air travel. The Court DENIES the motions to dismiss count 1, but GRANTS the motions for a bill of particulars on Count 1. The Court GRANTS in part defendant Redhorse-Stallworth's motion for severance, and SEVERS Counts 28 through 39 from the balance of the remaining counts. Finally, the Court DENIES WITHOUT PREJUDICE TO RENEWAL defendant Hunter's request for notice of intent to use evidence.


**BACKGROUND**

On October 17, 2006, the government filed a superseding indictment against eight members of the Coyote Valley Band of Pomo Indians ("the Tribe"). During the time period covered by the indictment, the defendants – Priscilla Hunter, Iris Martinez, Darlene Crabtree, Michelle Campbell, Michael Hunter, Fred Naredo, and Allan Crabtree – were all officers or members of the tribe's governing body, the Tribal Council. The Coyote Valley Shodokai Casino ("the Casino") is located on the Tribe's reservation. The Casino is a gaming establishment operated by the Tribe pursuant to an ordinance and resolution approved by the National Indian Gaming Commission ("NIGC"). Defendant

Kathy Redhorse-Stallworth was the Chief Financial Officer of the Casino.

Relevant to the instant prosecution is a 2001 settlement agreement between NIGC and the Tribe.[1] The settlement agreement states,

> An investigation by the Tribal Council and the NIGC revealed that some of the Tribe's gaming revenues were incorrectly used. The Tribe and the NIGC have determined that the deficiencies in the Casino's accounting systems, internal controls and policies and procedures have contributed to the impermissible use of gaming revenues. The Tribe and the NIGC agree that resolving these matters by settlement agreement is in the parties' best interest.

Crabtree Motion to Dismiss, Ex. A ¶ 2. The settlement agreement states that the Tribal Council engaged in a number of "improper actions" with regard to casino assets, including using Casino-issued credit cards for personal expenditures. *Id.* ¶ 10(b). The settlement agreement adopts a number of policies to protect tribal gaming revenues, such as prohibiting the Casino from making charitable gifts, and requiring that Casino-issued credit cards be used for travel expenses only. *Id.* ¶¶ 17(d), 18(k).

Defendant Priscilla Hunter signed the settlement agreement on behalf of the Tribe, and defendants Campbell, Allan Crabtree and Darlene Crabtree signed promissory notes, incorporated by reference into the settlement agreement, under which they agreed to repay the Casino for the amount each was found to have owed. Defendants Priscilla Hunter, Michael Hunter, and Iris Martinez also acknowledged owing money to the Casino, and repaid the Casino those amounts prior to the execution of the agreement.

With the 2001 settlement agreement as background, the indictment alleges that on a date unknown but no later than May 2001 continuing to in or around December 2004, defendants stole and misapplied tribal and casino funds, and conspired to do so, by, *inter alia*, (1) using credit and debit cards issued to them and paid or funded by the Tribe for personal items; (2) purchasing first-class airplane tickets rather than coach or economy tickets; and (3) making political donations. The indictment also charges certain defendants with conspiracy to obstruct justice by allegedly altering and destroying Tribal and Casino records in 2003 to obstruct an NIGC investigation regarding the Tribe's and Casino's compliance with the 2001 settlement agreement. Finally, the indictment charges defendants Priscilla Hunter and Michelle Campbell with numerous counts of tax evasion and failure to file income tax

---

[1] The settlement agreement is attached as Exhibit A to defendant Crabtree's motion to dismiss.

returns between 1999 and 2003.

Now before the Court are numerous motions to dismiss the indictment, two motions for a bill of particulars, a motion for severance, and a request that the government inform defendants of what evidence it intends to use so that defendants may determine whether they wish to file motions to suppress.

## DISCUSSION

**1.     Defendants' motions to dismiss the indictment**

**A.     Counts related to making political contributions: 18-25**

All defendants named in Counts 18-25 have moved to dismiss the conspiracy and substantive counts regarding making political contributions on the ground that making political contributions with Casino monies is not a crime. Counts 18-25 charge defendants with willful misapplication of casino funds. The elements of that crime are: (1) the defendant abstracted, purloined, willfully misapplied or carried away with the intent to steal; (2) money, funds or other property of a value in excess of $1,000; (3) belonging to a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission ("NIGC"). 18 U.S.C. § 1167(b).

The parties agree that the Tribe's use of revenue generated by the Casino was governed by 25 U.S.C. § 2710 and 25 C.F.R. § 522.41(b)(2). Under Section 2710 and the NIGC regulations, net revenues from any tribal gaming are not to be used for purposes other than: "(1) to fund tribal government operations or programs; (2) to provide for the general welfare of the Indian tribe and its members; (3) to promote tribal economic development; (4) to donate to charitable organizations; or (5) to help fund operations of local government agencies." 25 U.S.C. § 2710(b)(2)(B)(i)-(iv).

The government contends that defendants violated Section 2710, and therefore committed the crime of willful misapplication of casino funds, because making political donations is not listed as a permissible use of gaming revenues in Section 2710. In addition, the government contends (and the superseding indictment alleges) that the May 2001 settlement agreement between NIGC and the Tribe provides that "[n]o charitable gifts *or other gifts* shall be made by the Casino." Thus, the government

3

argues, defendants "knew" that they were not authorized to make gifts or contributions to politicians.

Defendants contend that nothing in federal law, or Section 2710 in particular, prohibits tribes from making political donations. In fact, defendants argue that political contributions are permissible under Section 2710 in that they "provide for the general welfare of the Indian tribe and its members" and "promote tribal economic development." Defendants have also submitted the February 8, 2006 testimony of NIGC Chairman Philip Hogen before the United States Senate Committee on Indian Affairs. Chairman Hogen testifies, *inter alia*, that using tribal funds for political purposes, lobbying expenditures, and campaign contributions "were deemed to fall into one or more of three permissible expenditure classifications [under § 2710]: providing for the general welfare of the tribe and its members, promoting tribal economic development, and funding tribal governmental operations." Hunter Reply in Support of Motion to Dismiss, Ex. A at 9.

Defendants also argue that construing Section 2710 to prohibit Indian Tribes from making political contributions violates the First Amendment rights of tribes, and raises serious due process concerns by criminalizing conduct that a "person of ordinary intelligence" would not know was prohibited from reading the words used in the law. *Grayned v. Rockford*, 408 U.S. 104, 108 (1972). Finally, defendants argue that even if they violated the NIGC settlement agreement (which they deny), such a violation would give rise to a civil suit for breach of contract, not criminal liability.

The Court agrees with defendants that making political contributions is not clearly prohibited by the federal statutes or regulations cited by the government. The government does not cite any cases construing Section 2710 to prohibit Indian Tribes from making political donations. The Court finds it particularly significant that the NIGC Chairman – the head of the entity that entered into the settlement agreement with the Tribe – expressed his view to the U.S. Senate Committee that making political donations was permitted under Section 2710. *See United States v. Apex Oil Co.*, 132 F.3d 1287, 1291 (9th Cir. 2003) (holding rule of lenity required dismissal of count where regulation was ambiguous and conduct charged was common, and noting that "[n]o attempt was made by the government to enjoin the captains' practice, to subject them to civil sanctions or to enforce earlier a statute that has been on the books since 1980 and under which a regulation was adopted in 1983.").

The Court also agrees that even if defendants violated the 2001 settlement agreement by making

4

political contributions, any such violation does not give rise to criminal liability.[2]  The settlement agreement does not address what would happen if any Tribe member breached the agreement, and does not state that a breach of the agreement could lead to criminal liability.  The government does not cite any authority for its contention that a breach of the settlement agreement amounts to a federal crime.

### B.      Counts related to first class air travel: 2-17

Defendants Iris Martinez and Priscilla Hunter move to dismiss numerous counts against them alleging a "First-Class Airfare Scheme."  The superseding indictment charges that defendants Martinez and Priscilla Hunter "embezzled, knowingly converted and wilfully misapplied the Casino's funds by causing first-class travel to be booked and paid for them when traveling on business, rather than following the Tribe's and Casino's fiscal policies and federal regulations requiring all air travel to be booked at coach or economy government rates."  Superseding Indictment ¶ 20.

Defendants argue that booking first-class air travel is not a crime, and that the government has not identified any fiscal policies and procedures or federal regulations prohibiting first-class travel. Defendants note that the government does *not* allege that the travel itself was for an illegitimate purpose, but rather that the cost of defendants' first-class travel "resulted in significant expense to the Casino and the Tribe."  Defendants also correctly note that to the extent the government wished to rely on the NIGC settlement agreement (which, as discussed above, would not provide a basis for criminal liability in any event), that agreement makes no mention of limiting air travel to coach or economy rates.  Defendants further argue that in the absence of any laws or regulations criminalizing their conduct, prosecuting them for booking first-class air travel violates Due Process.

The government's response is wholly inadequate, and simply parrots the language of the indictment without citing any laws or regulations criminalizing defendants' conduct.  The government asserts, without any supporting citations or explanation, that "[t]he Tribe's procedures (adopted by the Council no later than May 2001) and the regulations required air travel on Tribal business to be

---

[2]  Accordingly, the Court finds it unnecessary to address the parties' arguments regarding whether making political donations was barred by the settlement agreement's prohibition on making charitable donations "or other gifts."

purchased at the lowest available government rate, and mandated the use of coach or economy fares." Opposition at 2-3. The government does not identify or cite these "Tribe procedures," nor does the government explain how violation of any such Tribe procedures would lead to federal criminal liability. Accordingly, the Court finds that the government has not identified any basis for criminal liability, and dismisses these counts.

### C.     Count 1: conspiracy to steal and misapply Tribal funds

Count 1 charges defendants Priscilla Hunter, Michelle Campbell, Iris Martinez, and Michael Hunter with conspiring to steal and misapply tribal funds "by using credit and debit cards issued to them and paid or funded by the Tribe to purchase personal items for their own benefit, in contravention of the Settlement Agreement and the Tribe's and Casino's fiscal policies and procedures." Superseding Indictment ¶ 17. The indictment lists thirteen overt acts allegedly committed by defendants in which they misapplied Tribal funds by making personal purchases: six overt acts by Priscilla Hunter, two by Iris Martinez, four by Michelle Campbell, and one by Michael Hunter. *Id*. at ¶18(a)-(m).

Defendants contend that Count 1 should be dismissed for failure to adequately charge a conspiracy. Defendants argue that even accepting as true all the allegations in the indictment, Count 1 describes only individual actions and not joint actions, thus failing to allege an agreement among the co-defendants to commit the criminal acts. Defendants also note that many of the charges alleged in the indictment are below the $1000 threshold required to establish a violation of 18 U.S.C. § 1167(b), and thus the government has lumped a number of charges together – without alleging an agreement between defendants – in order to allege a federal crime.

The government responds that the following facts provide circumstantial evidence of the existence of a conspiracy: (1) the Tribal Council, which included defendants, was responsible for making decisions regarding the Tribe's financial affairs, (2) the Council was reprimanded in the 2001 Settlement Agreement and directed to change its ways, (3) defendants Priscilla Hunter, Michael Hunter, Campbell and Martinez continued to use credit and debit cards for personal use, and (4) defendants Priscilla Hunter, Campbell and Martinez participated in the cover up to prevent NIGC from learning of the credit and debit card misuse.

United States District Court
For the Northern District of California

As discussed in Section II below, the Court finds that while defendants' motion to dismiss presents a close call, at this juncture in the case it is more prudent to grant defendants' alternative motion for a bill of particulars to allow the government the opportunity to augment its allegations of a conspiracy.

## 2. Defendants motions for bill of particulars[3]

### A. Count 1

As an alternative to dismissal of Count 1, defendants seek a bill of particulars providing information as to the government's conspiracy theory and how the government intends to prove the existence of a conspiracy among the four charged defendants. Defendants argue that the government should, *inter alia*, identify or state: (1) each and every act committed by defendants and other individuals that are evidence of the conspiracy; (2) which defendants acted in concert with each other; (3) which defendants (if any) received proceeds, profited from, or received any benefit as a result of any overt act attributed to each defendant; (4) the government's theory as to how defendants conspired with each other in violation of federal law; and (5) what was the alleged agreement among defendants.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may in its discretion require a bill of particulars where necessary to inform the defendant of the charges against him, to minimize the danger of surprise at trial, to prepare for the defense, and to protect against double jeopardy. *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1984). The Ninth Circuit has held that, in deciding whether to order a bill of particulars, a court "should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Id.*

The Court concludes that defendants are entitled to a bill of particulars as to Count 1, although not to the extent sought. The Court agrees with defendants that, as currently stated, the indictment does not allege facts showing a conspiracy. Instead, the indictment only describes individual actions and does not allege an agreement between the defendants to commit the criminal acts. The Court finds that

---

[3] The Court does not address defendants' arguments regarding those counts that are being dismissed by this Order.

it is reasonable to require the government to identify or state (1) what was the alleged agreement among defendants, and (2) with regard to each overt act listed in the indictment, which defendants were involved in the alleged conspiratorial act. If, as defendants contend, the government has no evidence of an actual agreement between defendants, and instead the charged acts are individual acts that do not rise to the level of a federal crime, defendants may renew these arguments upon a fuller record.

### B.    Counts 26 and 27

Count 26 charges Campbell (along with Priscilla Hunter, Martinez, and Redhorse-Stallworth) with conspiracy to obstruct justice, and Count 27 charges Campbell (and the same defendants) with obstruction of justice. These counts charge that in or around July 2003, "[t]he defendants, having been informed that NIGC planned to conduct an investigation regarding the Tribe's and Casino's compliance with the Agreement, conspired to participate in the alteration and destruction of Tribal and Casino records, with the intent to impede, obstruct and influence the NIGC investigation." Superseding Indictment ¶ 36. The indictment alleges that in furtherance of the conspiracy, defendant Priscilla Hunter directed a Tribal employee to blacken out credit card information in financial records maintained by the Tribe and the Casino; that all four defendants met to alter, mutilate, conceal, cover up, falsify and make false entries in Tribal and Casino financial and business records; and that a "Casino employee" shredded certain Tribal business records. *Id.* ¶ 37(a)-(c).

Defendant Campbell contends that a bill of particulars is warranted because the indictment only uses generic descriptions that do not explain to defendants what they are alleged to have done. Defendant argues that the indictment should state when, where or how the agreement to conspire was allegedly made, what acts (if any) were taken to further the conspiracy, and what the individual defendants' roles were.

The Court concludes that defendant is entitled to a bill of particulars, although not to the extent sought by the motion. The Court agrees with the government that the indictment need not specify every overt act committed in furtherance of the charged conspiracies. *See United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985) (defendants not entitled to bill of particulars in order to obtain names of unknown co-conspirators, exact date on which alleged conspiracy began, or statement of all overt acts),

*amended on other grounds*, 777 F.2d 543 (1985).  However, the Court finds it reasonable to require the government to provide some greater detail regarding the individual defendants' roles in the conspiracy, as well as greater detail regarding the "financial and business records" that were allegedly altered, mutilated, concealed, covered up, falsified and entered falsely.

**3.      Defendant Redhorse-Stallworth's motion for severance**

In light of the Court's dismissal of the political contribution and first-class airfare counts, defendant Redhorse-Stallworth is named in only two of the remaining fifteen counts, Counts 26 and 27 (conspiracy to obstruct and obstruction of justice) discussed above.  The other thirteen remaining counts are Count 1 – the "conspiracy to  misapply Casino funds" count – and Counts 28-39, which charge Priscilla Hunter and Michelle Campbell with tax evasion and failure to file a tax return.   Redhorse-Stallworth contends that Counts 26 and 27 should be severed from all the other counts because the great majority of evidence concerns other defendants, and she will be prejudiced by the "spill-over" effect of evidence against other defendants.[4]

The decision whether to sever pursuant to Rule 14 is committed to the discretion of the Court. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994).  Severance may be appropriate to avoid prejudice to a defendant; however, Rule 14 "sets a high standard for a showing of prejudice." *Id.* at 846; *see also United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987).  The Ninth Circuit has stated,

> Inquiry into the prejudicial effect of a joint trial involves consideration of several factors, including: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

---

[4]  Stallworth states that the government claims to have distributed 216,000 pages of discovery spanning alleged conspiracies beginning no later than May 2001 until December 2004, and that the evidence relating to Stallworth consists of 600 pages of reports, including Stallworth's testimony before the Grand Jury on June 15, 2004, her recorded interview with Agent Clyde Raborn of the Department of Justice on April 12, 2004, and a follow up interview with Agent Raborn on May 26, 2005.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004).

The Court concludes that the motion to sever should be granted in part. The Court finds that Counts 28-39 should be severed from Counts 1, 26 and 27 because Counts 28-39 are substantively distinct from Counts 1, 26 and 27. The tax evasion and failure to file tax return counts are only alleged against two defendants, and the Court is concerned about the potential for confusion of the jury if these counts are combined with the conspiracy and obstruction counts.

The Court's dismissal of Counts 2-25 addresses many of the other concerns raised by defendant Redhorse-Stallworth in her motion, and the Court is not persuaded that this defendant will be prejudiced at trial by the inclusion of Count 1. The Court believes that the jury will be able to compartmentalize the evidence regarding Count 1, and that limiting instructions can eliminate any potential prejudice.

Defendant Redhorse-Stallworth also complains that the government plans to introduce co-conspirator statements at trial in violation of her Sixth Amendment rights. However, defendant acknowledges that Federal Rule of Evidence 801(d)(2)(E) provides that a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay, and that statements properly admitted under Rule 801(d)(2)(E) do not violate a defendant's Sixth Amendment rights. *See Bourjaily v. United States*, 483 U.S. 171, 182- 83 (1987); *see also United States v. Lujan*, 936 F.2d 406, 410 (9th Cir. 1991) ("there is no Confrontation Clause problem raised since the requirements of Rule 801(d)(2)(E) are satisfied").

The Court finds that defendant's contentions are premature. If the government cannot prove the foundational requirements for statements to be admitted under Rule 801(d)(2)(E), then those statements will not be admitted at trial. In addition, Redhorse-Stallworth has not identified any specific statements that the government wishes to introduce, and thus her arguments are speculative. Defendant Redhorse-Stallworth may raise objections to the admissibility of co-conspirator statements when the issue is actually ripe for decision.

**4.**     **Defendant Priscilla Hunter's Request for Notice of Government's Intent to Use Evidence**

Defendant Priscilla Hunter states that the documentary discovery exceeds 200,000 pages, and in order for defendants to determine whether a motion to suppress evidence lies, the government must identify what evidence at what locations or from what sources it intends to rely on in its case-in-chief. At the hearing on November 30, 2007, the government agreed to meet and confer with defendants and provide the requested information, so the pending motion will be denied as moot. However, defendant Hunter has subsequently indicated dissatisfaction with the government's response, so this denial is without prejudice to renewal of the motion if necessary.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendants' motions to dismiss the indictment (Docket Nos. 133, 138, 142, 158, 165), GRANTS in part and DENIES in part as moot defendants' motions for a bill of particulars (Docket Nos. 146, 151), GRANTS in part and DENIES in part defendant Redhorse-Stallworth's motion to sever (Docket No. 175), and DENIES WITHOUT PREJUDICE TO RENEWAL defendant Hunter's request for notice of intent to use evidence (Docket No. 130).

**IT IS SO ORDERED.**

Dated: January 22, 2008

_____
SUSAN ILLSTON
United States District Judge